## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GRAVITY DEFYER MEDICAL
  TECHNOLOGY CORP.,
ALEXANDER ELNEKAVEH,
  10643 Glenoaks Boulevard
  Pacoima, CA 91331, and


      Plaintiffs,


      v.

FEDERAL TRADE COMMISSION,
  600 Pennsylvania Avenue, NW
  Washington, DC 20580, and

THE UNITED STATES OF AMERICA,
  United States Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530,

      Defendants.

Case No. 1:22-cv-1157

## COMPLAINT

On July 8, 2019, Defendant Federal Trade Commission ("FTC"), a federal agency created by and subject to the oversight of Defendant the United States of America, issued a Civil Investigative Demand to Plaintiff Gravity Defyer Medical Technology Corporation ("Gravity Defyer"). The agency sought to investigate pain reduction claims made in advertising for Gravity Defyer's footwear with VersoShock® soles. Nearly three years later, on February 17, 2022, the FTC issued a letter stating that the agency agreed that the unique supportive, shock-absorbing design of Gravity Defyer shoes provides requisite support for pain reduction claims, including the following identified by the agency in a non-exhaustive listing: "VersoShock technology . . . absorbs harmful shock, reducing pain and discomfort," "8+ hour comfort so that people can stay active and on their feet all day without pain," and "Absorb harmful energy from hard surfaces like cement and concrete and leave people feeling restored, revitalized and ready to get back on their

feet."[1] ***Thus, Plaintiffs and Defendants agree that when a consumer purchases Gravity Defyer shoes for pain relief, the consumer in fact receives pain relieving shoes.***

Prior to the FTC's investigation, Gravity Defyer commissioned the Olive View-UCLA Medical Center to design and conduct a randomized, double-blind, and controlled human clinical study to test the pain-relieving properties of its footwear. That study confirmed that Gravity Defyer shoes with VersoShock® soles provide relief for knee, back, foot, and ankle pain. During the course of the FTC's investigation, the *Journal of the American Podiatric Medical Association* conducted an extensive peer-review of the study (hereinafter "UCLA Study") and then published it in the journal's January/February 2022 issue.[2]

The FTC, for reasons unknown, has insisted through multiple years of investigation that the *Journal of the American Podiatric Medical Association* had rejected the UCLA Study for publication. Wrong on that point, the FTC then contrived all manner of other reasons the UCLA Study ought not be considered adequate substantiation.

For instance, the FTC apprised Gravity Defyer that the agency believes the study too small (52 participants) and too short (a five-week duration). That despite that footwear studies involving far fewer participants and shorter durations are generally accepted in the scientific community as competent proof of effects on pain.

Under the First Amendment commercial speech doctrine, the U.S. government may not ***prohibit*** advertising unless it is ***inherently*** misleading. If speech is only ***potentially*** misleading, the remedy is ***more disclosure, not speech restriction or prohibition***.

---

[1]     **Exhibit A**, Letter from Maria Del Monaco, Attorney, Federal Trade Commission, to J. Kathleen Bond, Lathrop GPM, LLP (Feb. 17, 2022) (hereinafter "FTC Feb. 17, 2022 Letter").

[2]     **Exhibit B**, Ross, *et al.*, *Knee Pain Reduction Using a Shock-Absorbing Sole*, J AM POD MED ASSN 112(1) (Jan. 2022).

The FTC's "concerns" as to the UCLA Study are baseless and amount to unscientific conjecture. Gravity Defyer nevertheless has offered to add to its advertising any reasonable disclosures or qualifications that the FTC desires to address its "concerns" – for instance, disclosing the size and duration of the study. The FTC flatly rejected those offers – without even an attempt at establishing that reasonable disclosures would be insufficient to cure the agency's perception of misleadingness.[3]

While admitting the truth of numerous pain claims, the FTC's February 17 letter took the extraordinary and illogical position that it would prohibit "Gravity Defyer . . . and/or Mr. Elnekaveh" from making any "advertising claims *that cite or otherwise rely on*" the UCLA Study (emphasis added).[4]

*In seeking to suppress any speech by Plaintiffs referencing the UCLA Study and barring Plaintiffs from using it at all in advertising, Defendants deprive Plaintiffs of their First Amendment rights. In turn, Defendants also violate Plaintiffs' Fifth Amendment due process rights where there is no administrative process Plaintiffs can use to compel the Defendants to honor Plaintiffs' First Amendment rights. Plaintiffs seek a narrow and specific declaratory judgment from this Court holding FTC's action unconstitutional under the First and Fifth Amendments.*

## THE PARTIES

1.       Plaintiff Gravity Defyer Medical Technology Corporation is a California Corporation with its principal place of business at 10643 Glenoaks Boulevard in Pacoima, California. It is a medical technology company that manufactures and sells high-quality, durable,

---

[3]      FTC Feb. 17, 2022 Letter.

[4]      *Id.*

comfort footwear. Incorporated in 2008, Gravity Defyer currently has 56 employees and operates three retail stores. Gravity Defyer also sells its footwear products online and through various retailers across the United States. Gravity Defyer enjoys a small but loyal customer following in the U.S. shoe market.

2.      Plaintiff Alexander Elnekaveh is a natural person and a citizen and resident of California. Gravity Defyer's advanced comfort footwear technology largely stems from the ingenuity of Mr. Elnekaveh, the company's Founder and Chair.

3.      Defendant Federal Trade Commission is an independent agency of Defendant the United States of America, created by statute. 15 U.S.C. §§41–58. The FTC is empowered, among other things, to regulate health-related claims in advertising pursuant to its statutory authority to prohibit deceptive practices under Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52. The agency's powers to regulate advertising are derived solely from that statute. While the FTC may focus the weight of its vast resources against companies that are arguably engaged in the manufacture of unsafe products, the FTC has also targeted companies that bring admittedly safe, and even beneficial products to market.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1346 because all causes of action arise under the Constitution and laws of the United States.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## BACKGROUND FACTS

### I.      Gravity Defyer Is a Successful Small Business and a Leader in Innovative Footwear.

6.      As Gravity Defyer's Founder, Mr. Elnekaveh has led the company's many years of research and development efforts. One of the most significant early steps he made for the company

was to secure a patent for Gravity Defyer's VersoShock® technology, an air-circulation-based spring system that absorbs shock from the ground up with each step.[5] Gravity Defyer developing a unique technology deemed non-routine or prior art under U.S. patent standards demonstrates the company's commitment to research and innovation.

7.      Gravity Defyer is a company that, unlike its competitors, routinely invests in research and relies on a loyal base of repeat customers who benefit from its products.

8.      Gravity Defyer shoes with VersoShock® soles receive top consumer ratings, with minimal consumer complaints.

II.     **Shoes with VersoShock® Soles Are Designed, and Proven, to Reduce Pain.**

        A.      **Design Features of the VersoShock® Sole Represent Significant Innovations that Combat Pain.**

9.      Each VersoShock® sole includes not only VersoShock® technology but also five other key features, all working synergistically to alleviate pain ordinarily induced by the pressure and shock of the weight-bearing effects of walking and running. The unique overall design represents the culmination of years of testing and consultation with experts in varied fields from podiatry and biomechanics to shoe materials.

        1.      **VersoShock® Technology**

10.     Gravity Defyer's VersoShock® technology was specifically designed to attenuate shock associated with walking and running, and thereby, alleviate pain associated with gait.

11.     Although shoes designed with extra cushioning for running have existed since at least the 1970s, there has been limited research concerning how shoe design might affect shock absorption and foot spring. While "traditional athletic shoes have a one-part mechanism consisting

---

[5]     *See* U.S. Patent No. 8,555,526.

of either air, gel, foam, or a spring" to assist with shock absorption and foot-spring in gait, VersoShock® uses a unique three-part construction.[6] The three parts are (1) a synthetic foam spring in the shoe's heel; (2) an air pocket chamber that surrounds the spring; and (3) a lip and clip design below the front portion of the heel, beneath the spring and air chamber (*see below* Figures 2A and 2B from the UCLA Study, at 6). The combined effect of these systems is to alleviate pain associated with the weight bearing effects of walking and running.



12.     When the heel strikes the ground, the synthetic spring compresses to cushion, assisting the plantar fascia and pronation.[7] The lip and clip engages at the same time, providing a rocker or trampoline effect, also supporting pronation and augmenting the muscles in the foot in creating upward mobility.[8] This construction "reduce[s] shock force in the sagittal plane at heel strike" and "aids in propulsion at heel-off," providing a logical means by which to support and attenuate disruptions to the body's natural shock absorption.[9]

---

[6]      UCLA Study, at 5.

[7]      *Id.*

[8]      *Id.*

[9]      *Id.*

2.      **The Five Other Key Attributes of the VersoShock® Sole**

13.      In addition to the VersoShock® technology, each VersoShock® sole contains five other proprietary attributes for energy management and stabilization. These include a unique internal shank, heel cup, and other features shown in laboratory testing to assist gait.

B.      **The UCLA Study Proves that Shoes with VersoShock® Soles Substantially Reduce Pain.**

1.      **Qualifications of the Researchers**

14.      The well-credentialed podiatrists who conducted the UCLA Study are experts in the relevant fields to which Gravity Defyer's claims relate.

15.      Lester J. Jones, D.P.M., M.S. Ed. served as the Primary Investigator for the study. Dr. Jones is board certified by the American Board of Podiatric Medicine and has practiced and taught podiatry. He currently serves as the Executive Associate Dean for Academic Affairs and a Professor of Podiatric Medicine at the College of Podiatric Medicine at Western University in Pomona, California. Dr. Jones's Master of Education and Doctor of Podiatric Medicine degrees are from the California College of Podiatric Medicine.

16.      Aksone Nouvong, D.P.M., F.A.C.F.A.S. served as the Sub-Primary Investigator of the UCLA Study. Dr. Nouvong is board certified in foot surgery and a fellow of the American College of Foot and Ankle Surgeons American Professional Wound Care Association. Dr. Nouvong currently serves as Chair for the Department of Podiatric Surgery and Deputy Chief of Surgery at DVA Greater Los Angeles and Olive View-UCLA Medical Center. She is also a widely published researcher and serves as a Professor in the Department of Vascular Surgery at the David Geffen School of Medicine at UCLA, and as Associate Residency Director at Western University. Dr. Nouvong is a past member of the Board of Directors for the American College of Foot and Ankle Surgeons.

17.    Arnold Ross, D.P.M., who has provided consultation on the development of Gravity Defyer shoes since approximately 2011, drafted the manuscript for the UCLA Study. Dr. Ross holds a Doctorate of Podiatric Medicine from the California School of Podiatric Medicine at Samuel Merritt University. He has practiced in Los Angeles, California for nearly 40 years and is board certified by the American Board of Podiatric Orthopedics and Primary Podiatric Medicine. Dr. Ross is also an Associate Professor of Biomechanics and Mechanical Orthopedics with Western University College of Podiatric Medicine.

### 2.    Design and Execution

18.    The objective of the UCLA Study was to compare the pain-relieving effects of shoes with Gravity Defyer's VersoShock® soles to those of control shoes with traditional soles.[10] Prior to the beginning of the UCLA Study, an institutional review board at the Olive View-UCLA Medical Center reviewed and approved the protocol.[11]

19.    Researchers enrolled fifty-two (52) adult participants (ages 35-60, BMI 28.5) who were nurses, physical therapists, and other hospital personnel at Olive View-UCLA Medical Center, who reported standing for most of the workday.[12] Participants were identified as suffering from unilateral or bilateral knee pain during prolonged standing and activity. As described in the study, such knee pain is "extremely common" and "most commonly" caused by mechanical problems, arthritis, or injuries.[13]

20.    Participants were randomly assigned to either the "intervention" group (unmarked Gravity Defyer shoes with the VersoShock® soles) or "control" group (Champion Anomaly shoes

---

[10]    *Id.* at 2.

[11]    *Id.*

[12]    *Id.* at 2, 3, Table 1.

[13]    *Id.* at 1.

with all brand identifiers removed). Following a baseline clinic visit, researchers conducted two telephone interviews with participants at two and four weeks, and a final clinic visit occurred at five weeks.[14] At each visit and during each interview, participants rated their pain using the validated and generally accepted Universal Pain Assessment Tool for each of the following areas: right and left knee; back; right and left ankle; and right and left foot.[15] Pain scores for the right and left knee were aggregated to produce a total knee pain score.[16] Finally, a total pain score was aggregated over all body areas.[17]

### 3.    Results and Conclusions

21.    By the end of the study, "[p]ain reduction was significantly greater in the intervention group than in the traditional sole group for all assessed areas (all $P < .05$)."[18]

22.    Specifically, participants in the intervention group experienced the following outcomes:

- Reduced overall knee pain versus control (p<0.0001);
- Reduced left knee pain versus control (p<0.0001);
- Reduced right knee pain versus control (p<0.0001);
- Reduced back pain versus control (p=0.01);
- Reduced left ankle pain versus control (p=0.04);
- Reduced right ankle pain versus control (p=0.02);
- Reduced left foot pain versus control (p=0.003);
- Reduced right foot pain versus control (p=0.004); and

---

[14]    *Id.* at 2.

[15]    *Id.* at 2–3.

[16]    *Id.* at 3.

[17]    *Id.*

[18]    *Id.* at 4 and Table 3.

- Reduced overall total pain versus control (p<0.0001).[19]

23.    Participants in the intervention group experienced the following percentage pain reductions:

- An 85% reduction in knee pain versus a 15% increase in the control group (p<0.0001);
- A 91% reduction in back pain while the control group experienced only a 45% reduction (p=0.01);
- A 92% reduction in both left and right ankle pain, while the control group experienced only 32% and 42% reductions, respectively (p=0.04, p=0.02); and
- A 74% reduction in left foot pain versus a 24% reduction in the control group, and a 77% reduction in right foot pain versus 35% in the control group (p=0.003, p=0.004).[20]

24.    The researchers reached the following conclusions:

This randomized double blind controlled study demonstrated that a shoe sole designed to increase shock absorption can significantly relieve generalized knee pain during prolonged standing and walking, providing evidence for shoe design as a potential medical device.[21]

25.    The researchers also observed as follows:

The findings of this study may be of great significance for individuals with knee pain, particularly those whose jobs require prolonged walking or standing. This study also provides evidence that footwear designed to absorb shock may improve workplace functionality for jobs that require prolonged standing or walking. Finally, the results of this study are notable in conditions where the use of prefabricated and/or custom shoe inserts are beneficial, such as plantar fasciitis and lower-limb osteoarthritis.[22]

### 4.    Publication of the UCLA Study

26.    The UCLA Study was accepted for publication in August 2021 by the *Journal of the American Podiatric Medical Association*, and the study was published in the first issue of 2022. As the official journal of the American Podiatric Medical Association, this journal is the "oldest

---

[19]    *Id.* at 4–5 and Table 3.

[20]    *Id.* at 4–5 and Table 4.

[21]    *Id.* at 7.

[22]    *Id.* at 6 (internal references omitted).

and most frequently cited peer-reviewed journal in the profession of foot and ankle medicine."[23]

27.     Although a published, peer-reviewed, randomized, double-blind, controlled clinical study is far from required to support Gravity Defyer's health benefit claims, the company nevertheless sought out and funded that extremely high level of scientific support. As confirmed by publication in a premiere journal, the study results are not only statistically verified, but show clear clinical significance in reducing a variety of different types of pain associated with gait. Publication of findings following peer review in a premiere journal in the field indicates their general acceptance in the scientific community.

## III.     Defendants Seeks to Suppress Speech Based on the UCLA Study, in Violation of the First Amendment.

28.     Under the First Amendment commercial speech doctrine, the U.S. government may not prohibit advertising unless it is provably, and thus, inherently misleading.[24] If speech is only potentially misleading, the remedy applied is more disclosure, not prohibition.[25]

29.     The FTC, acting under authority granted it by the U.S. government, has a documented history of overreach in enforcement against health-related advertising claims based on clinical research.[26]

---

[23]     Journal of the American Podiatric Medical Association, *About* (n.d.), at japmaonline.org/page/about.

[24]     *See, e.g.*, *Pearson v. Shalala*, 164 F.3d 650, 655, 659–660 (D.C. Cir. 1999); *Kimberly-Clark Corp. v. D.C.*, 286 F. Supp. 3d 128, 133 (D.D.C. 2017); *Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 91 (1990) ("Although [the government] may prohibit misleading advertising entirely, it may not place an absolute prohibition on potentially misleading information if the information may also be presented in a way that is not deceptive.").

[25]     *Id.*

[26]     *See, e.g.*, *United States v. Bayer Corp.*, No. CV 07-01(JLL), 2015 WL 5822595, at *14 (D.N.J. Sept. 24, 2015) (upholding advertising claims based on clinical research); *FTC v. Garden of Life, Inc.*, 845 F. Supp. 2d 1328 (S.D. Fla. 2012), *aff'd in relevant part* 516 F. App'x 852 (11th Cir. 2013) (same).

30.     On July 8, 2019, the FTC issued to Gravity Defyer a Civil Investigative Demand seeking to investigate pain reduction claims made in advertising for Gravity Defyer's footwear with VersoShock® soles.

31.     The FTC investigation has been ongoing ever since, with virtual meetings with the staff attorneys leading the case, the Director of the FTC's Bureau of Consumer Protection, and the current four Commissioners, Chair Khan and Commissioners Phillips, Slaughter, and Wilson.

32.     The FTC, for reasons unknown, insisted through multiple years of investigation that the *Journal of the American Podiatric Medical Association* had rejected the UCLA Study for publication. Proven wrong on that point, the FTC then contrived all manner of other reasons the UCLA Study might still be inadequate.

33.     The following is a list of the FTC's unfounded, so-called "concerns": (1) the *Journal of the American Podiatric Medical Association* rejected the UCLA Study for publication, a point now definitively proven incorrect; (2) the UCLA Study was somehow inadequately powered, even though it showed statistically significant results, confirming adequate statistical power; (3) the UCLA Study was insufficiently blinded despite meeting the blinding requirements specified for clinical studies on shoes in prior FTC orders against Skechers and Reebok; (4) the secondary measures from the UCLA Study are somehow unreliable despite being pre-determined and all showing statistically significant results, (5) other Gravity Defyer VersoShock® shoes, for some unknown reason, may not be adequately similar to the tested shoe even though each has the same VersoShock® sole; (6) data from testing of a prior Gravity Defyer Super Walk® shoe should have been, for reasons entirely unknown, analyzed with the testing on the VersoShock® shoes; (7) for reasons unknown, Gravity Defyer purchasing and providing the control shoes, a Champion Anomaly shoe, was somehow nefarious, despite being standard research practice; (8) the study

was of inadequate duration at five weeks, even though prior FTC orders against Skechers and Reebok require clinical studies on shoes to be a mere week longer, at six weeks; (9) the very commonly used and validated pain measure the researchers selected and employed is somehow invalid where it uses a subjective survey instrument, even though pain is by definition a subjective state; (10) two study participants having taken over-the-counter pain medications somehow invalidates the study even though allowing pain medication increases the ethical and "real world" nature of the study, and even though, when data from those two participants are excluded, the study results all remain statistically significant; (11) four participants in the control group discontinuing use of their assigned shoe in the final two weeks of the study somehow matters even though the researchers were ethically obligated to allow such discontinuation, and even though, when data from those four participants are excluded, the study results all remain statistically significant, and (12) Olive View-UCLA Medical Center's participant consent form was somehow nefarious where it disclosed that Gravity Defyer shoes were being tested, as required by applicable state law governing human clinical investigations.

34.     The FTC's above, misguided "concerns" as to the UCLA Study, even if not entirely based on conjecture (and they are) could, at most, call into question the general strength of the UCLA Study. None could prove the study invalid or render reference to the study misleading, especially if accompanied by qualification aimed at curing any perceived misleadingness.

35.     Theoretically, if the FTC could show that a study's data was fabricated or otherwise fraudulent, the FTC could show that speech based on such a study would be provably, inherently misleading. The FTC, then, could possibly establish that all reasonable qualifications would fail to cure misleadingness. The FTC however has not, and certainly could not, make any such allegation in this case.

36.     Despite failing to allege even that the UCLA Study was fundamentally flawed, such that speech based on it would be inherently misleading, the FTC has insisted that it must prohibit any and all speech about on the UCLA Study.

37.     Gravity Defyer apprised the FTC of the First Amendment issues raised by the agency banning all speech referencing the UCLA Study. The FTC, however, remained steadfast in its position that it would prosecute the Defendants unless they committed to avoiding any reference in advertising to the UCLA Study.

38.     In an effort to avoid litigation, but unwilling to relinquish its First Amendment speech rights, Gravity Defyer and Mr. Elnekaveh offered to apply whatever reasonable qualification the FTC demanded to address each of the FTC's "concerns" about the UCLA Study – even though the "concerns" FTC identified are entirely unfounded and scientifically invalid.

39.     The FTC flatly rejected the offer, stating in its February 17, 2022 letter that "[a]s we have discussed, the Commissioners have indicated that" Gravity Defyer must not "make any advertising claims that cite or otherwise rely" on the UCLA Study and "your proposed [qualified] language is also unacceptable."[27]

40.     Strangely, the same letter indicated the Commissioners' belief that the unique design of the Gravity Defyer shoes was sufficient by itself to substantiate a wide variety of pain relief claims such as, "With VersoShock technology that absorbs harmful shock, reducing pain and discomfort," "8+ hour comfort so that people can stay active and on their feet all day without pain," and "Absorb harmful energy from hard surfaces like cement and concrete and leave people feeling restored, revitalized and ready to get back on their feet."[28]

---

[27]     FTC Feb. 17, 2022 Letter.

[28]     *Id.*

41. ***Effectively, Defendants would allow pain relief claims for Gravity Defyer footwear with VersoShock® soles, but not any speech referencing or relying on the UCLA Study, a clinical study supporting those same pain relief claims.***

42. Plaintiffs have diligently sought to avoid litigation with Defendants. They have done so even though the position taken by, and the threats made by, the FTC violate Plaintiffs' First Amendment rights to freedom of speech and Fifth Amendment rights to due process. Plaintiffs have reached an impasse with Defendants, and Defendants have threatened Plaintiffs with suit unless they relinquish their First Amendment rights.

43. On April 22, 2022, the FTC made clear that it would file suit against Plaintiffs and that the "Commission has voted (unanimously) and the case has been referred to the Department of Justice pursuant to 15 U.S.C. § 56(a)(1)."[29] With that vote and referral, Defendants will soon commence litigation against Gravity Defyer and Mr. Elnekaveh, alleging deceptive advertising in violation of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52.

44. By seeking to deprive Plaintiffs of their First Amendment commercial speech rights, Defendants deprive Plaintiffs of their right to continue to engage in marketing and sale of its unique, clinically tested, pain-relieving footwear.

45. There is no administrative process Plaintiffs can use to compel Defendants to honor Plaintiffs' First Amendment speech rights.

---

[29] **Exhibit C**, Email from Maria Del Monaco, Attorney, Federal Trade Commission, to J. Kathleen Bond, Lathrop GPM, LLP (Apr. 22, 2022).

## FIRST CLAIM FOR RELIEF

### Declaratory Relief, First Amendment Freedom of Speech

46.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

47.     An actual controversy has arisen and does now exist between Plaintiffs and Defendants with respect to Plaintiffs' First Amendment speech rights.

48.     By seeking to suppress any and all speech referencing the UCLA Study, including even qualified advertising claims, Defendants violate Plaintiffs' First Amendment rights to freedom of speech.

49.     The FTC has communicated its intention to commence immediately the litigation it has repeatedly threatened against Plaintiffs.

50.     Defendants' actions described above create a direct and immediate dilemma for Plaintiffs, to either waive their First Amendment rights, or to exercise those rights and face litigation by Defendants.

51.     Plaintiffs accordingly seek a declaration that Defendants' actions constitute a present and ongoing violation of Plaintiffs' First Amendment rights to freedom of speech.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief, Fifth Amendment Due Process

52.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

53.     Plaintiffs have a constitutionally protected liberty interest in the free expression of truthful commercial advertising referencing the UCLA Study; in Gravity Defyer's reputation as a

law-abiding footwear seller with which others may contract without fear of FTC enforcement; and in their right to pursue a living through marketing and sale of footwear.

54.     Plaintiffs have a property interest in the scientific research supporting the pain relieving effects of their footwear with VersoShock® soles.

55.     Defendants have violated Plaintiffs' Fifth Amendment due process rights by depriving them of their liberty and property interests without due process of law, by failing to honor Plaintiffs' First Amendment speech rights.

56.     There is no administrative process Plaintiffs can use to compel the FTC to honor Plaintiffs' First Amendment speech rights.

57.     Plaintiffs accordingly seek a declaration that Defendants' insistence on banning any and all speech based on the UCLA Study constitutes a present and ongoing violation of Plaintiffs' Fifth Amendment due process rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.     On the First Claim for Relief, for a declaration that: Defendants' insistence on banning all speech based on the UCLA Study constitutes a present and ongoing violation of Plaintiffs' First Amendment rights to freedom of speech;

2.     On the Second Claim for Relief, for a declaration that: Defendants' insistence on banning any and all speech based on the UCLA Study constitutes a present and ongoing violation of Plaintiffs' First Amendment rights to freedom of speech, and in turn, a present and ongoing violation of Plaintiffs' Fifth Amendment due process rights;

3.     For costs of suit incurred herein; and

4.     For such other relief as the Court deems just and proper.

DATED: April 26, 2022

Respectfully submitted,

*/s/ Samuel A. Butler*

Samuel A. Butler (#D00479)
J. Kathleen Bond (DC Bar #985786;
*application for D.D.C. admission filed*)
Lathrop GPM, LLP
600 New Hampshire Avenue, NW
The Watergate - Suite 700
Washington, DC 20037
Phone (202) 295-2200
samuel.butler@lathropgpm.com
katie.bond@lathropgpm.com

*Attorneys for Plaintiff, Gravity Defyer Medical Technology Corp.*

Jonathan W. Emord (#407414)
Emord & Associates, PC
11808 Wolf Run Lane
Clifton, VA  20124
Phone (202) 466-6937
jemord@emord.com

*Attorney for Plaintiff, Alexander Elnekaveh*