UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRAVITY DEFYER MEDICAL
TECHNOLOGY CORP., *et al.*,

*Plaintiffs*,

v.

FEDERAL TRADE COMMISSION, *et al.*,

*Defendants.*

Civil Action No. 22-1157 (RDM)

## MEMORANDUM OPINION

This is one of two cases pending before the Court regarding advertisements claiming, among other things, that "a double-blind study conducted by Olive View UCLA Medical Center" shows that "patients experienced significant reduction in overall pain with Gravity Defyer Footwear." Complaint at 9, *Fed. Trade Comm'n v. Gravity Defyer Med. Tech. Corp.*, No. 22-cv-1464 (D.D.C. May 25, 2022), ECF No. 1. According to the Federal Trade Commission ("FTC" or "Commission"), those advertisements are false or deceptive and thus violate the Federal Trade Commission Act, *id.* at 18–19; according to Gravity Defyer Medical Technology Corporation ("Gravity Defyer") and its founder, Alexander Elnekaveh, the FTC's concerns are baseless, and its advertisements constitute constitutionally protected commercial speech, *see* Complaint at 2, *Gravity Defyer Med. Tech. Corp. v. Fed. Trade Comm'n*, No. 22-cv-1157 (D.D.C. July 22, 2022), ECF No. 12.

Before turning to the merits of that dispute, however, the Court must consider the threshold question of whether the targets of an FTC investigation and subsequent enforcement action may maintain their own suit against the FTC, where that action amounts to little more than

a defense to an FTC enforcement action. In this case, No. 22-1157, Plaintiffs ask this Court to "[e]nter a declaratory judgment holding that [the FTC's] insistence on banning [Plaintiffs'] speech . . . constitutes a present and ongoing violation of Plaintiffs' First Amendment rights to freedom of speech" and "Fifth Amendment due process rights" and to "permanently enjoin[] Defendants . . . from taking actions to ban [Plaintiffs'] speech." *Id.* at 19 (Am. Compl.). In the FTC's view, those arguments are properly asserted, if at all, as defenses to the enforcement action now pending before this Court in Case No. 22-1464. The FTC, accordingly, moves to dismiss Plaintiffs' amended complaint in this action. Dkt. 20.

For the reasons explained below, the Court will **GRANT** the FTC's motion to dismiss this action. Dkt. 20.

## I. BACKGROUND

For purposes of evaluating the FTC's motion, the following factual allegations, which are taken from Plaintiffs' complaint, are accepted as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court does not, however, accept the truth of any legal conclusions that are unsupported by factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Gravity Defyer is a California corporation that sells "high-quality, durable, comfort footwear," Dkt. 12 at 4 (Am. Compl. ¶ 1), including shoes with "VersoShock" technology soles, which, according to Gravity Defyer, "alleviate pain ordinarily induced by the pressure and shock of the weight-bearing effects of walking and running," *id.* at 5–6 (Am. Compl. ¶ 9). Plaintiffs allege that, in July 2019, the FTC "issued to Gravity Defyer a Civil Investigative Demand seeking to investigate pain reduction claims made in advertising for [the company's] footwear with VersoShock soles." *Id.* at 12 (Am. Compl. ¶ 30). Throughout its investigation, the FTC

2

raised a series of concerns about the company's reliance in its advertisements on a study of VersoShock soles, which was commissioned by Gravity Defyer, *id.* at 2, and conducted by researchers at UCLA. *See id.* at 7–8, 12–14 (Am. Compl. ¶¶ 14–17, 34); *see also* Dkt. 20-1 at 10. That study concluded that "[p]ain reduction [in participants' knees, back, ankles, and feet] was significantly greater in the intervention group"—who wore "unmarked Gravity Defyer shoes with the VersoShock soles"—than in the "traditional sole group"—who wore "Champion Anomaly shoes with all brand identifiers removed," *id.* at 9 (Am. Compl. ¶¶ 20–21); *see also id.* at 10–11 (Am. Compl. ¶¶ 22–25) (summarizing the study's findings). The FTC, among other things, expressed concern that the study was "insufficient [in] size" and in "duration;" that the researchers "fail[ed] to ensure adequate double-blinding;" and that the study "relied solely on participants' self-reported pain levels instead of including range of motion or other functional tests." *Id.* at 13 (Am. Compl. ¶ 34).

"In an effort to avoid litigation," *id.* at 15 (Am. Compl. ¶ 39), Gravity Defyer and its founder, Alexander Elnekaveh, offered in a February 15, 2022 letter to apply "qualifying language . . . to Gravity Defyer's current advertising," Dkt. 12-1 at 2 (Ex. A). The FTC replied two days later, on February 17, 2022, indicating that the proposed language was "unacceptable" and proposing alternate advertising claims that Gravity Defyer could make about its VersoShock soles. *Id.* at 2–3 (Ex. A). In that same letter, the FTC indicated that it "would like to reach a settlement," which would "include a monetary component and . . . [an] agreement to a stipulated order." *Id.* at 3 (Ex. A). "If your clients are willing to cease making advertising claims based on the study," the FTC's counsel wrote, "please let us know and we would be happy to discuss the remaining aspects of the settlement with you." *Id.* But those settlement negotiations broke down, and, on April 22, 2022, the FTC notified Plaintiffs that "the Commission ha[d] voted

(unanimously) and the case ha[d] been referred to the Department of Justice pursuant to 15 U.S.C. § 56(a)(1)." Dkt. 12-3 at 2 (Ex. C); *see also* Dkt. 12 at 16 (Am. Compl. ¶ 45).

Four days later, on April 26, 2022, Plaintiffs filed suit in this Court, seeking declaratory and injunctive relief. Dkt. 1 (Compl.). Among other things, Plaintiffs asked this Court to declare that the "FTC's action" (*i.e.*, the February 17th letter indicating an intention to "prohibit [Plaintiffs] . . . from making any 'advertising claims that cite or otherwise rely on' the UCLA Study") was "unconstitutional under the First and Fifth Amendments." *Id.* at 3 (Compl.) (quoting Dkt. 1-1 at 3 (Ex. A)). On May 25, 2022, however, the FTC filed an enforcement action against Gravity Defyer and Elnekaveh in this Court. *See* Complaint, *Fed. Trade Comm'n v. Gravity Defyer*, No. 22-cv-1464 (D.D.C. May 25, 2022), ECF No. 1. In that action, No. 22-1464, the FTC alleges that Gravity Defyer's advertising practices violate provisions of the FTC Act prohibiting "unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a), including the "disseminat[ion] [of] any false advertisement," *id.* § 52(a). Complaint at 18–20, *Fed. Trade Comm'n*, No. 22-cv-1464, ECF No. 1. The FTC also alleges that Gravity Defyer and Elnekaveh are acting in violation of a 2001 FTC Order that prohibited Elnekaveh—"directly or through any corporation"—from "misrepresent[ing]" either (1) "the existence, contents, validity, results, conclusions, or interpretations of any test, study or research" or (2) "that the experience represented by any user testimonial or endorsement of [a] product represents the typical or ordinary experience of members of the public." *Id.* at 5–6 (Compl. ¶¶ 14–15); *see id.* at 17–18 (Compl. ¶¶ 29–36).

After the FTC filed the enforcement action, it moved to dismiss Plaintiffs' original complaint in this action as moot. Dkt. 9. Shortly thereafter, Plaintiffs filed an amended complaint in this action, seeking both declaratory relief and an injunction barring the FTC "from

4

taking actions to ban [Plaintiffs'] speech based on the UCLA study." Dkt. 12 (Am. Compl.). Three days later, Gravity Defyer and Elnekaveh moved to dismiss the FTC's enforcement action for failure to state a claim, arguing that the FTC had failed to allege violations of the Federal Trade Commission Act or the 2001 Order and that the 2001 Order did not, in any event, extend to Gravity Defyer or to the footwear products it sells. Motion to Dismiss at 18–35, *Fed. Trade Comm'n*, No. 22-cv-1464 (D.D.C. July 25, 2022), ECF No. 13-1. On August 2, 2022, this Court consolidated the two actions and ordered that all future pleadings be filed in the lead case, No. 22-cv-1157. *See* Min. Order (Aug. 2, 2022). Now before the Court is the FTC's motion to dismiss Plaintiffs' amended complaint in Case No. 22-1157, Dkt. 20.

## II. ANALYSIS

### A.  Injunctive Relief

The Court starts with Plaintiffs' claim for injunctive relief. As an initial matter, the Court notes that any claim for injunctive relief relating to the FTC's now completed investigation is moot. Plaintiffs do not allege that any cognizable harm suffered as a result of an FTC investigation is likely to recur, and the Court accordingly lacks jurisdiction to issue injunctive relief relating to the completed investigation. *See City of L.A. v. Lyons*, 461 U.S. 95, 105–06 (1983). This, then, leaves Plaintiffs' request that the Court enjoin the FTC from taking any prospective "actions to ban [their] speech based on the UCLA study," Dkt. 12 at 19 (Am. Compl.), including, presumably, and most notably, continuing to pursue the enforcement action.

"Entitlement to a permanent injunction rests upon [Plaintiffs] showing" four things: (1) that they have suffered or will imminently suffer an irreparable injury; (2) "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;" (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in

5

equity is warranted;" and (4) "that the public interest would not be disserved by a permanent injunction." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015) ("*Morgan Drexen II*") (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "Failing to satisfy any factor is grounds for denying relief." *Id.* And "[i]f a less drastic remedy . . . [is] sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* (omissions and alterations in original) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010)).

The D.C. Circuit's decision in *Morgan Drexen, Inc. v. Consumer Fin. Protection Bureau*, 785 F.3d 684 (D.C. Cir. 2015), is particularly instructive here. In that case, Morgan Drexen, Inc.—a paralegal services company—brought suit for declaratory and injunctive relief against the Consumer Financial Protection Bureau ("CFPB") shortly after the CFPB "advised Morgan Drexen's counsel via letter that it was considering bringing an enforcement action against the company." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 108 (D.D.C. 2013) ("*Morgan Drexen I*"). Morgan Drexen alleged that "the provisions of the Dodd-Frank Act creating and empowering the CFPB" were unconstitutional and asked the Court to enjoin the CFPB from prosecuting a later-filed enforcement action brought in the Central District of California. *Id.* at 109 (internal quotation marks omitted). This Court concluded that "injunctive relief [was] unwarranted," *id.* at 116, and the D.C. Circuit affirmed—at least in part because "Morgan Drexen could, and did, assert its constitutional challenge to Title X of the Dodd-Frank Act as a defense in a motion filed in the California district court to dismiss the Bureau's enforcement action," *Morgan Drexen II*, 785 F.3d at 694.

As the D.C. Circuit explained, before the CFPB filed its enforcement action, Morgan Drexen lacked an "adequate remedy at law." *Id.* (internal quotation marks omitted). At that

6

time, "Morgan Drexen's potential penalties . . . were accumulating daily," *id.*, and the company faced the "Hobson's choice" between "'continually violat[ing] the . . . law and expos[ing] themselves to potentially huge liability' pending agency action 'or violat[ing] the law once as a test case and suffer[ing] the injury of obeying the law during the pendency of the proceedings and any further review,'" *id.* at 694–95 (omission and alterations in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). But, significantly, "Morgan Drexen . . . was relieved of th[at] Hobson's choice once the Bureau filed the enforcement action." *Id.* at 695. "At that point, it no longer 'faced the . . . troubling question of whether it was willing to risk serious penalties in order to obtain . . . a hearing at all.'" *Id.* (omissions in original) (quoting *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 413–14 (D.C. Cir. 2011)).

So too here. Now that the FTC has filed its enforcement action against Gravity Defyer and Elnekaveh, Plaintiffs can assert their constitutional challenges as defenses to the FTC's enforcement action. *See* Motion to Dismiss at 23, 30–31, *Fed. Trade Comm'n*, 22-cv-1464 (D.D.C. July 25, 2022), ECF. No. 13-1. To be sure, Gravity Defyer and Elnekaveh only briefly raise their First Amendment argument in their motion to dismiss the enforcement action. *See id.* at 23, 30–31. But that is a strategic choice that Plaintiffs made and, more importantly, it is one that is easily remedied: If Gravity Defyer and Elnekaveh want to refile their motion to dismiss in the enforcement action, incorporating all of the First and Fifth Amendment arguments that they have made in this case, the Court will allow them to do so.

Notwithstanding the ongoing enforcement action and their ability to raise their First and Fifth Amendment arguments in that proceeding, Plaintiffs maintain that they remain "on the horns of a dilemma"—namely, whether to "continue with the advertising" and face "increasing penalties" or to "entirely cease the challenged advertising during the pendency of the FTC's

enforcement." Dkt. 23 at 25 (internal quotation marks omitted). Construed most favorably, Plaintiffs seem to argue that they will suffer "irreparable harm" while the FTC's enforcement action proceeds through its ordinary judicial course. The Court is unpersuaded for several reasons. First, there is no reason to believe that their defensive lawsuit will proceed—or will need to proceed—more expeditiously than the FTC's enforcement action. Plaintiffs have not sought a temporary restraining order or preliminary injunction in this case, nor have they explained why—if essential—they could not ask the Court to grant expedited treatment to the enforcement action.

Second, Plaintiffs have failed to show that they are suffering any ongoing First Amendment injury. Although Plaintiffs contend that the "suppression of advertising claims[] 'for even minimal periods of time[] unquestionably constitutes irreparable injury," Dkt. 23 at 25 (quoting *Whitaker v. Thompson*, 248 F. Supp. 2d 1, 15 (D.D.C. 2002)), they do not allege that their speech has, in fact, been "suppress[ed]." To the contrary, Plaintiffs confirm that Gravity Defer has "chosen [to] continue with the advertising it believes to be substantiated by the UCLA Study." *Id.*

Third, although Plaintiffs argue in their opposition brief that "Gravity Defyer has recently been contacted by its primary lending bank;" that the bank "informed Gravity Defyer of its concerns regarding this lawsuit;" and that "the bank said that it will keep monitoring the situation and . . . might consider withdrawing Gravity Defyer's line of credit, a move which would force Gravity Defyer out of business," *id.* at 26–27, no such allegation appears in their amended complaint. Even if it were possible to supplement Plaintiffs' complaint through an opposition brief with these additional facts—which it is not, *see Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014)—the bank's assertion that it will "monitor[] the situation" and "might

8

consider withdrawing Gravity Defyer's line of credit" in the future, Dkt. 23 at 27, does not support a claim of imminent irreparable injury, *Monsanto Co.*, 561 U.S. at 162–63; *see also Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (explaining that irreparable injury must be "both certain and great" and that "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business").

Finally, absent a showing that Gravity Defyer faces an imminent risk to the very existence of the business, "the cost and delay associated with modern-day litigation simply does not establish irreparable harm." *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 25 (D.C. Cir. 1986); *see also id.* ("As the Supreme Court has succinctly put it, irreparable harm must be 'greater than the harm suffered by any litigant forced to wait until the termination of the [proceeding] before challenging interlocutory orders it considers erroneous.'") (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 n.13 (1981)).  And, even more to the point, maintaining two lawsuits, rather than one, will only add to the overall cost of the litigation.

Injunctive relief is an equitable remedy, and nothing in Plaintiffs' amended complaint or opposition brief offers any basis to conclude that this action could afford them any meaningful relief that is not already available in the enforcement action.  Thus, like the plaintiffs in *Morgan Drexen*, Plaintiffs have an "adequate remedy at law," which lies in that separate action, 785 F.3d at 694.  The Court will, accordingly, grant the FTC's motion to dismiss Plaintiffs' claims for injunctive relief.

## B. Declaratory Relief

The Court turns, next, to the FTC's contention that the Court should decline to exercise jurisdiction over Plaintiffs' declaratory judgment claims. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," and "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Declaratory Judgment Act is permissive; the Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls*, 515 U.S. 277, 286 (1995)). "In deciding whether to exercise its permissive jurisdiction over declaratory actions, a court may consider 'equitable, prudential, and policy arguments.'" *Swish Mktg, Inc. v. Fed. Trade Comm'n*, 669 F. Supp. 2d 72, 76 (D.D.C. 2009) (quoting *MedImmune, Inc.*, 549 U.S. at 136).

The D.C. Circuit has enumerated a number of relevant considerations to guide courts in deciding whether to exercise jurisdiction under the Declaratory Judgment Act, including:

> whether [a declaratory judgment] would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing;" the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

*Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976). The Court need not consider every factor on this list, nor is the list exclusive. *Morgan Drexen II*, 785 F.3d at 697.

The list does, however, focus the inquiry on what matters most: "the usefulness of a declaratory judgment, the role of such relief in ending the dispute between the parties, and the incentives for parties' behavior." *Id.*

In this case, the *Hanes* factors weigh decidedly against exercising jurisdiction over Plaintiffs' defensive declaratory judgment action. Most significantly, a declaratory judgment would add nothing to the efficient resolution of the dispute between the parties. Although a decision in Plaintiffs' favor in this action would, in Plaintiffs' words, "expedit[e] [the] adjudication of the" enforcement action, Dkt. 23 at 24, permitting Plaintiffs to assert the same arguments as defenses in the enforcement action would serve the very same purpose. Plaintiffs do not contest that they can raise their constitutional challenges as defenses in that action—although they have, to date, done so only in passing. *See* Motion to Dismiss at 23, 30–31, *Fed. Trade Comm'n*, No. 22-cv-1464, ECF. No. 13-1. That concession is important because "[w]here," as here, "a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *Swish Mktg.*, 669 F. Supp. 2d at 80 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2004)); *see also Malibu Media, LLC v. Parsons*, No. 12-cv-1331, 2013 WL 12324463, at *9 (D.D.C. May 31, 2013) (explaining that the Declaratory Judgment Act is designed to "give[] a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has *not* reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has *not yet done so*" (emphases added) (quoting 10B Charles Alan Wright et al., Federal Practice and Procedure § 2751 (3d ed. 2013))).
11

Nor is this simply a matter of deciding which of the two cases should proceed, since the enforcement action provides a forum for Plaintiffs to raise all of the arguments that they seek to raise in this case, *and* it provides a forum for the FTC to raise a host of arguments that are not encompassed by this case. In *POM Wonderful LLC v. Fed. Trade Comm'n*, 894 F. Supp. 2d 40 (D.D.C. 2012), the Court declined to exercise Declaratory Judgment Act jurisdiction because, even "if the court resolved the issues [the plaintiff] raised in its declaratory judgment action, the parties would still have to litigate whether [the plaintiff's] health claims about its products were false, misleading, and unsubstantiated in violation of the FTC Act." *Id.* at 44. The same is true here. Adjudicating Plaintiffs' Declaratory Judgment Act claims would leave unresolved a host of additional questions posed by the FTC's enforcement action, such as whether the 2001 Commission Order provides an independent basis for restricting the types of claims that Elnekaveh—acting either directly or through a corporation—can make in advertisements about tests, studies, or research. *See* Complaint at 5–6 (Compl. ¶¶ 14–15), *Fed. Trade Comm'n*, No. 22-cv-1464.

Plaintiffs argue that much of the precedent discussed above is inapposite because, unlike in those cases, this case and the enforcement action have been "consolidated before this Court." Dkt. 23 at 24. But "consolidation" of cases does not "merg[e] the constituent cases into one," *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018) (explaining that consolidation "enabl[es] more efficient case management while preserving the distinct identities of the cases"), and maintaining the two suits—one filed by Plaintiffs and the other by the FTC—would require the Court to consider the distinct subset of questions raised by each complaint (and each motion to dismiss), rather than addressing the issues together as part of the FTC's enforcement action, *see Morgan Drexen II*, 785 F.3d at 697 ("[T]he real question for the court is . . . which [action] will most

12

fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." (quoting 10B Wright et al., *supra*, § 2758)). Even more importantly, Plaintiffs fail to identify any interest that they have in maintaining the two suits that would not be served equally by raising their arguments as defenses in the enforcement action. As the D.C. Circuit has observed, "[w]here it is uncertain that declaratory relief will benefit the party alleging injury, the court will normally refrain from exercising its equitable powers." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1020 (D.C. Cir. 1991).

Turning to "the incentives for [the] parties' behavior," *Morgan Drexen II*, 785 F.3d at 697, the Court concludes that "the equity of the conduct of the declaratory judgment plaintiff" and the "prevention of 'procedural fencing'" also weigh against exercising Declaratory Judgment Act jurisdiction. *Hanes Corp.*, 531 F.2d at 591 n.4. In addressing this factor, Plaintiffs confuse the merits of their claims (or defenses) with the judicial interest in preventing "procedural fencing," arguing that Gravity Defyer acted "equitably" in relying on the UCLA Study in its advertising. Dkt. 23 at 22. But, as explained above, Plaintiffs can raise their arguments about the propriety of the UCLA Study in the enforcement action. For present purposes, the question is only whether permitting Plaintiffs to maintain a separate defensive action, brought in anticipation of the FTC's enforcement action, would create incentives for similar "procedural fencing" in the future, and the answer to that question is "yes."

As explained above, the FTC notified Plaintiffs on April 22, 2022 that it was "referr[ing] [the matter] to the Department of Justice," Dkt. 12 at 16 (Am. Compl. ¶ 45), and Plaintiffs were aware of an impending enforcement action when they filed suit in this Court four days later, *see* Dkt. 1 (Compl.). *Cf. Morgan Drexen I*, 979 F. Supp. 2d at 118 (finding that this factor weighed in favor of dismissal where "[the plaintiff] was aware of the likelihood of a Bureau enforcement

13

action" at the time it filed suit). Although courts typically take a "dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum," *Swish Mktg.*, 669 F. Supp. 2d at 78 (quoting *AmSouth Bank*, 386 F.3d at 788), a similar principle applies even absent an allegation of forum shopping. "The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure;" such an approach not only "deprives the plaintiff of his traditional choice of forum," but also "provokes a disorderly race to the courthouse" and invites the filing of suits that are premature or not yet fully ripe for adjudication. *Morgan Drexen II*, 785 F.3d at 697 (quoting *Hanes Corp.*, 531 F.2d at 592–93); *see also BASF Corp. v. Symington*, 50 F.3d 555, 599 (8th Cir. 1995) ("It is our view that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue.").

      Finally, none of the remaining *Hanes* factors counsel in favor of exercising jurisdiction over Plaintiffs' suit. The "state of the record" is identical in both cases; neither has progressed past the motion-to-dismiss stage. *Hanes Corp.*, 531 F.2d at 591 n.4. And because "the parties are equally adverse in both" cases, that factor "do[es] not provide significant weight on either side of the balance." *Morgan Drexen I*, 979 F. Supp. 2d at 119 n.6. Finally, although the First and Fifth Amendment claims (or defenses) that Plaintiffs seek to raise are—as they assert, Dkt. 23 at 22—"question[s]" of "public importance," *Hanes Corp.*, 531 F.2d at 591 n.4, they can raise the same arguments in the enforcement action. Even more importantly, the Court must also consider "the public interest [in] avoiding a potentially unnecessary decision on constitutional issues because [Plaintiffs] might prevail in the . . . enforcement action on the basis of one of its

non-constitutional defenses." *Morgan Drexen II*, 785 F.3d at 697; *see also Morgan Drexen I*, 979 F. Supp. 2d at 119 n.6 (referencing, in the context of this inquiry, the principle that a Court will "normally . . . not decide a constitutional question if there is some other ground upon which to dispose of the case" (quoting *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984))).

Guided by the *Hanes* factors, the Court will, accordingly, decline to exercise jurisdiction over Plaintiffs' declaratory judgment claim and will grant the FTC's motion to dismiss Plaintiffs' claims for declaratory relief.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 20, is hereby **GRANTED**. As explained above, the Court will provide an opportunity for Plaintiffs in this action to refile their motion to dismiss in the enforcement action, more robustly addressing their First and Fifth Amendment arguments. Plaintiffs shall file a status report in the enforcement action on or before March 24, 2023, notifying the Court and the FTC whether they intend to do so and, if they do, proposing a date for refiling that motion. The Court will also close this docket, will reopen the docket in the enforcement action, and will direct the parties to file any future pleadings in that docket.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 20, 2023